DEB BRUNDAGE
PO Box 6683
Mesa, Arizona 85216
602-329-8227

RECEIVED

2024 DEC 10  AM 9: 51

CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

Defendant Pro Se

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In Re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, ET AL., | No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding Case No. 19-51069 (JKS) |
| v. | |
| DEB BRUNDAGE, | |
| Defendant. | |

## MEMORANDUM
## IN RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT ("MSJ")

### Table of Contents

Page

Table of Contents ........................................................................... i

Cases and Authorities                                                          ii

Response to "NATURE AND STATUS OF PROCEEDING"                                   1

Response ot "SUMMARY OF ARGUMENT"                                              1

Response to "STATEMENT OF UNDISPUTED FACTS"                                    2

Defendant's Undisputed Facts                                                   4

Response to plaintiff's ARGUMENT                                               5

    A) Summary Judgment and Standard of Review          5

    B) Substantive Law                                  6

      i) No liability as Joint Intentional Tortfeasor          6

      ii) Material Issues of Fact (Insufficient and hearsay
        Declaration)                                     9

    C) Response to Plaintiff's Argument                 12

      i)    First and Third Claims for Relief            12

      Ii)    Second and Fourth Claims for Relief          14

Conclusion                                                                     14

Certificate of Mailing                                                         15

## CASES AND AUTHORITIES

CASES

                                                                    Page

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986)                                        6

Briskman v. Del Monte Mortg. Co., 10 Ariz. App. 263, 458 P.
    2d 130 (1969)                                               12

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.
Ed.2d 265 (1986) ......6

Hay v. Duskin, 9 Ariz. App. 599, 455 P.2d 281 (1969) ......12

Jabczenski v. Southern Pac. Memorial Hospitals, 119 Ariz. 15,

579 P.2d 53 (App. 1978) ......12

Matshusita Electric Industrial Co. v. Zenith Radio Corp., 475
U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ......6

Merryweather v. Nixon, 8 Tenn Rep. 186, 101 Eng. Rep. 1337
(1799) ......7

Portonova v. Wilkinson, 128 Ariz. 501, 627 P.2d 232  (1981) ......12

OTHERS

Ariz.  Rev.Stat. 12-2501(1) ......7

Ariz.  Rev.Stat. 12–2501(F); ......7

Prosser, Law of Torts, p. 247 (2nd Ed., 1955) ......7

Restatement of the Law, Restitution, sec. 102 (1936) ......7

Uniform Contribution Among Tortfeasors Act, 1955, sec. 1.c ......7

J. P. Work, "Contribution-Wilful Tortfeasors-Common Law

and Under Uniform Contribution Among Tortfeasors Act",
3 Dickinson L.R. 262 (1958) ......7

## I. RESPONSE TO "NATURE AND STATUS OF PROCEEDING"

While this defendant was a sales person for Debtor, with respect to the Debtor's Ponzi scheme, nowhere is there even alleged that defendant knew of any illegality in what she sold or of the scheme, and in fact she did not know. See defendant's Declaration, paras. 2, 3, 4.   Indeed, when the question of illegality came up, she was assured by Debtor that there was no need for any license to sell the investments and that the sales were legal.  Nowhere is that denied by the Trustee.    At best for Trustee plaintiff, there are material factual issues on these points.

## II. RESPONSE TO "SUMMARY OF ARGUMENT"

1. Debtor operated a Ponzi scheme, an <u>intentional</u> wrong.  While defendant denies any knowledge or complicity in the scheme, for purposes of the law applicable here and upon an <u>arguendo</u> concession on one issue of applicable law, below at VI(B)(1), p. 6, defendant agrees that she assisted in the scheme (she was a sales person).   That makes, however, both parties <u>joint intentional tortfeasors</u>. There is <u>no</u> law supporting contribution <u>to</u> one intentional wrongdoer <u>from</u> another intentional wrongdoer.  <u>Id</u>.  The Trustee's MSJ shifts the blame, as it were, to another wrongdoer.    In cannot do that on the facts here.

The complaint seeks contribution by one <u>intentional</u> tortfeasor (trustee, by reason of being the successor in interest to debtor, one of the intentional wrong-doers, and operator of the scheme) to another (defendant, Debtor's sales per-

1

son).  The Trustee admits this complicity between the two.  See para. 6, Memo.
There is no right of contribution (here, a return of commissions paid by the Ponzi
principal to his sales person) if both actors are joint wrongful tortfeasors.

      2.     There are material factual issues preventing summary
judgment.  Plaintiff has provided no sufficient affidavit of facts to carry a MSJ.
The Declara-tion (Trozak), discussed below at p. 9ff omits essential, inculpatory
facts, and it is hearsay.  The Declaration is similar to that of a debt collector—no
first hand know-ledge of anything, just a reading of accounting records long after
the inculpatory events.  There is, however here, literally only one page of record
to read, a supposed payable ledger, which on its face states that the commission
checks t sued upon heren were <u>not</u> paid.

      3.     There is no proof of damages.  At the least, there is a question
of fact as to incurrence of any damages since the one document central to the
claim by plaintiff of commissions paid (and for which this MSJ is filed), literally
denies that payment with the phrase "DO NOT CUT CKS" stated on that one
record.

III.  RESPONSE TO "STATEMENT OF UNDISPUTED FACTS"

    For paras. 12 through 26, 28, 29, 32 through 35, this defendant has no
response.  None of these statements mention or allude to her, and she has no

knowledge of the facts alleged therein, other than to say that the facts in those paragraphs are general descriptions of the scheme and sales.  The MSJ describes a Ponzi scheme, but falls short, for MSJ purposes, of proving defendant's part in it.  There has been produced by plaintiff no record on any specific sales by defendant, or even on the one record supplied with the MSJ, that she was paid anything subject to return to the Trustee by any law sued under.

Para. 27 references her capacity or relationship with Debtor.  While the MSJ seeks recovery of commissions paid,  there is no evidence or understandable allegation as to what sales commissions were paid (see Exh 4, Trozak Decl.; re-attached here as Schedule 1), or even if any _were_ paid at all since that one record, the only record attached to the MSJ referring to defendant, lists supposed sales, not by name, and then says "DO NOT CUT CKS" on that one record for each which seemingly says no commissions were paid.  If that is true, no damages were incurred by the Trustee here.  If nothing was paid, or if there is a question of payment or not here is a material question of fact the MSJ should be denied.

Para. 30.   Denied.    This no identification of who was sold, etc., despite discovery requests _by defendant_ to plaintiff Trustee to identify the sales for which com-missions were to be returned.  The Trustee ignored those requests (or had

3

no such records, which on the discussion below as to the one record produced, seems to be the case).   While it is alleged that $55,989 in commissions was paid, that record (see Exh 4, Trozak Decl.) also says "DO NOT CUT CKS" which says no commissions were in fact paid.

IV.    DEFENDANT'S UNDISPUTED FACTS

1.    Defendant stands accused of receiving commissions from debtor on financial products illegally sold by her for Debtor, the latter operating a "Ponzi Scheme".  There is no allegation by the Trustee that this defendant did what she did knowing of any illegality.   There is, see defendant's Declaration, denial of that knowledge or intention.  Her Declaration makes it clear (and it is undenied by Trustee or anyone from Debtor) that she was assured when the issue came up that a) she needed no license to make the sales and b) the investments were legal.   See defendant's Declaration at 2, 3, 4 and 7.

3.    Merely because there was a Ponzi scheme does not prove Trustee's case against defendant.   There is no Declaration that defendant was knowingly involved.  Indeed, there is no allegation in any Declaration that she knew what she did was wrong   She in fact alleges that she was assured during her involvement that the sales needed no license and that there was nothing wrong with the product being sold when the issue came up, which was not often.

4

Trustee here (more accurately, Trustee's predecessor, Debtor, made those assurances.  See Defendant's Declaration, para. 2.   The Trustee stands in Debtor's shoes in those assurances..

      4.     Taking the facts now argued by Trustee in the MSJ as true, arguendo–Debtor and defendant knowingly collaborated--Trustee and defendant, then, were undisputedly joint intentional tortfeasors and actors.   (There are no allegations of negligence in the complaint.)  The fact that the party moving for MSJ is a Trustee does not sanctify the acts for Debtor, in whose shoes he stands.  A Trustee can claim no more good faith than Debtor (which is none) in operating a Ponzi scheme.  Trustee, standing in the shoes of an intentional wrongdoer is not elevated to good faith or non-wrongdoing by reason of his office on the facts sued upon, or by the fact that bankruptcy was declared by the wrongdoing Debtor

    V.  RESPONSE TO "ARGUMENT"

      A.  <u>Summary Judgment Standard</u>

In every summary judgment motion the procedural task before the court is to determine whether there exists a "genuine issue" of fact upon which a reasonable jury or trier of fact could decide in favor of the party opposing the motion.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); <u>Matshusita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475

U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

There are material issues of fact here preventing the grant of the MSJ.  It is

the Trustee's burden to prove its case, to wit, that an illegal scheme existed

(which for this MSJ, he does) <u>and</u> that a) defendant knew of it and, if not b) can

be constructively liable (which in this MSJ, he does <u>not</u> do).  There are material

factual issues as to them so as to prevent granting the MSJ.

B)   <u>Substantive Law</u>

There is considerable factual dispute whether a) defendant knowingly

participated in any scheme, and b) whether the Declarations of Trustee (of the

Declarations filed by the Trustee, only the Declaration of Trozak mentions

defendant) are sufficient to carry a MSJ.

1) With a concession <u>arguendo</u> that defendant was culpably

involved,  both the Trustee (successor to Debtor), and defendant are <u>joint</u>

<u>intentional tortfeasors</u>.  There is <u>no</u> law supporting contribution to one intentional

wrongdoer from another intentional wrongdoer.  See Uniform Contribution Among

Tortfeasors Act, 1955, sec. 1.c; see also that act as adopted by various states,

including Ariz. Rev.Stat. 12-2501(1); 12–2501(F); Prosser, <u>Law of Torts</u>, p. 247

(2nd Ed., 1955); <u>Restatement of the Law</u>, Restitution, sec. 102 (1936).  Plaintiff

thus has no claim here.

There was no contribution among joint tortfeasors at common law in this

country.  <u>Merryweather v. Nixon</u>, 8 Tenn Rep. 186, 101 Eng. Rep. 1337 (1799),

cited in J. P. Work, <u>"Contribution-Wilful Tortfeasors-Common Law and Under</u>

<u>Uniform Contribution Among Tortfeasors Act"</u>, 3 Dickinson L.R. 262 (1958).

Prosser summarized the matter as to intentional tortfeasors acting jointly

> "that the ground of the decisions would appear to be simply the fact that the parties had acted intentionally and in concert, and that the plaintiff's claim of contribution rested upon what was, in the eyes of the law entirely his own deliberate wrong.

<u>Id</u>., p. 247 (2nd Ed. 1955).

This is carried forward in the Uniform Contribution Among Tortfeasors Act

(1955) at Sec. 1.c, with particular regard to intentional wrongdoers:

> "There is no right of contribution in favor of any tortfeasor who has intentionally (wilfully or wantonly) caused or contributed to the injury . . . .

That statute has been adopted in sundry states including Arizona, where defend-

ant lives.

With respect, the Trustee here has forgotten the posture of the parties as to

each other.   <u>Arguendo,</u> their joint actions (one, the principal, and the other, the

agent) were wrongful.   The court should deny the MSJ as a matter of law since

such actions, bankruptcy law or not, are wrongdoers.  The court, on the above law cannot participate in the scheme by re-distributing the ill-gotten gain between joint wrongdoers.  That is exactly what the trustee seeks here.

Side bar, it cannot be argued that the since the Trustee here is not seeking to recover commissions <u>for itself</u> but for victims of the Ponzi scheme, the rule should not apply.   The rule denying any help to a wrongdoer from another wrongdoer is not built on who will profit, but rather on the "guilt" and inculpability of the joint action.

Whether a Ponzi scheme or statutory fraud occurred here is irrelevant.  It is only relevant that what the parties did was an <u>intentional</u> wrong, and that defendant engaged knowingly in it (again, for this motion defendant concedes she did so <u>arguendo</u>).  Trustee stands in the shoes of the other wrongdoer, the Debtor.  If Debtor engaged in a Ponzi scheme, which it did, so too must the Trustee be taken to have been in one as well.

2) There are <u>factual issues</u> that oblige the MSJ to be denied.

The MSJ is supported by a Declaration of one Nicholas Trozak.   Trozak's Declaration does not prove Trustee's case.

A.     Trozak claims "personal knowledge" of  what is in his Declaration (para. 1).   He  works for the forensic account hired by the Trustee to help in his

marshaling of assets (para. 2); his "personal knowledge" then, is what records he has read, not of Debtor's business per se.

B.      By his own definition, then, he claims no "personal knowledge" of defendant's involvement unless something inculpatory shows up in the records he has read.   Nothing has save one piece of paper, his Exh. 4.

C.      While he says he has knowledge of the "day-to-day" transactions of Debtor, he does not say how he can do that since he was not hired until several years after the events involving defendant here (para. 3); he then goes on to say what he knows is merely from having "access to and reviewed the business records of Debtors" (id.); he does not say what records, and he does not attach any record, save one (his Exh. 4; see his para. 8; Schedule 1 to Defendant's Declaration) (id.)    See F below.

D.      That he has only the one page, Exh. 4, of records relative to defendant, is demonstrated by the fact that the sample substantive Ponzi records refer-enced in para.  9 of his Declaration, are not transactions involving Defendant (para. 9 in her Declaration).  He does not connect them in any way with Defendant.   He thus does no know of any of defendant's customer or he would have attached those records, and not a sample.

9

E.    The only time Defendant is even named in Trozak's Declaration is para. 12, referencing Exh. 4, where he states that the exhibit demonstrates commissions paid to Defendant.  It does not do that.  That commis-sions were paid generally does not make the MSJ here since there are only specific commissions sought by Trustee (see Sched. 1, Exh. 4, Trozak Decl.)  Since defendant denies knowledge and intent, there is a material factual issue raised in the MSJ, whether the commissions accrued by knowledgeable wrongful act.

F.    More importantly, Trozak does not comment on the meaning of the phrase "DO NOT CUT CKS" on that one page for each commission, which seemingly says no commissions were paid.  If that is true, no damages were incurred here since nothing was paid to defendant.  Only the Exh. 4 transactions sued upon here, not some other relationship to "transfers" as argued under the bankruptcy statutes.   Defendant, to make this argument, does not have to prove she did not get; rather, the Trustee has to prove that she did.

G.    Exh. 4 to the Declaration is a list of alleged Ponzi sales made or referred by defendant.  It is unclear who or what they are.  In discovery, request was made for more information.  None was provided by the Trustee.   There is nothing in the exhibit that bespeaks of fraud and the deals, or customers, are not identified other than to indicate that some financial record says that defendant

was paid (or not paid, "DO NOT CUT CKS").  While para. 12 of the Declaration

says that defendant was paid $55, 989 "out of the Debtors' main operating

account" as "commissions".  To reach that conclusion, Trozak takes a speculative

leap by saying that these payments were "with respect to the sale of FPMC[,]

specifically Notes," but he attaches no such records to show that.  He reaches

this conclusion from looking at one page of records.  He would admit that he has

no other first hand (read, admissible) knowledge.   Trozak claims no first hand

knowledge.  He would admit that.  He  "reviewed business records" one ledger

page only.   He does not say what records he reviewed other than Exh. 4.   And

that record says no payment made, i.e.,  "DO NOT CUT CKS",

   H. Trozak's Declaration, as to Exh. 4, is inadmissible hearsay.  If it is

intended to qualify as a "business record" [FRE 803(6)] it utterly fails since it does

state that Exh. 4 was prepared at or near the time of occurrence, who prepared it,

whether the records reflect regularly conducted business activity,

contemporaneously prepared as the referenced acts occurred, and whether such

a record was a normally prepared record in Debtor's business.  Id.

   Only matters which would be admissible in evidence may be properly

considered in MSJ proceedings; affidavits which are not admissible as evidence

should not be considered.  Briskman v. Del Monte Mortg. Co., 10 Ariz. App. 263,

458 P.2d 130 (1969). General conclusions are not admissible and, when included in an affidavit in summary judgment, are not to be considered. <u>Hay v. Duskin</u>, 9 Ariz. App. 599, 455 P.2d 281 (1969). Hearsay affidavits are to be disregarded in summary judgment proceedings. <u>Portonova v. Wilkinson</u>, 128 Ariz. 501, 627 P.2d 232 (1981); <u>Jabczenski v. Southern Pac. Memorial Hospitals</u>, 119 Ariz. 15, 579 P.2d 53 (App. 1978).

The Trustee's MSJ stands before the court, then, with a Declaration that that does not connect the scheme to defendant or the money sought. At the least, the court should deny the MSJ for want of a sufficient Declaration. There exist material issues to prevent granting the MSJ.

C.  Response to plaintiff's ARGUMENT

i).  <u>First and Third Claims for Relief–intentional fraud</u>

The trustee first argues (p. 13ff, memo, paras. 40-51), first and third claims for relief, that a) a scheme existed, and b) it was done intentionally. All that may be true but nowhere does anyone allege that defendant knew it, or participated knowingly in it. She in fact denies knowledge (see defendant's Decl. at 2, 3, 4). At 42 it is argued that defendant received "transfers". Again she did not know they were ill-gotten gain. Importantly, the Trustee cannot even say what investors were involved (see Exh. 4, Torzak; Sched. 1), and even that one record

12

suggests that <u>no</u> transfers were made at all.   (Defendant is sued here only for certain alleged transfers; Exh. 4, not generally for an undetermined amount.) While a transfer in furtherance of a Ponzi scheme can be presumed illegal (see 46, Memo, top of page 16, and citing case), in this case the only record setting forth any transfer says -"DO NOT CUT CKS"'-which could only reasonably mean no check sent or funds transfers.

At the least, a factual issue exists on what the record says.   The Trustee just has no record here that the court may say as a matter of law in MSJ that defendant received illegal "transfers" since a) Exh. 4 indicates no payment was made on the ten listed proposed commissions, and hence, no transfer, and b) it cannot identify by name who these investors are or what "transfers" were involved.

The same is true as to the "badges of fraud", "concealment of assets", and state law violations  arguments, p. 18ff, Memo, 52- 65.   There is no receipt proved, no transaction identified.

Defendant understands that she must prove her defense to any MSJ. That duty arises only if a case is put forth.  She cannot respond intelligently to what is said on Exh. 4.   And that is the entire case here.  Here the best that can be said for the Trustee is that a scheme existed, and that defendant was a sales

person.    He fails, however, to show what commissions were paid, or for what transactions.   The duty to carry one's defense does not arise until a case is first shown, in this MSJ setting, to exist to the point of no factual dispute.   That is not the case here.

> ii)  Second and Fourth Claims (Constructive Fraud)

The trustee argues (p. 24ff, memo, paras. 66-68), second and fourth claims for relief the same thing, essentially as it does for the first and third claims. Before relief can be granted for a constructive fraud, there must not only be shown that need for one exists here (done by showing the scheme), and that this defendant did it, or participated in it to the extent of the 10 transactions alleged here on Exh. 4.   That has not been done beyond factual dispute.

V.    CONCLUSION

The motion must be denied on the law (joint intentional tortfeasor seeking relief) and because material factual issues exist including no sufficiently support-ive Declaration..

Dated this ___ day of December, 2024.

DEB BRUNDAGE
Defendant Pro Se

## CERTIFICATE OF MAILING

Defendant certifies that she has this date mailed a copy of the foregoing to the following:

PACHULSKI, STANG, ZIEHL JONES LAW OFFICES
Jason S. Pomerantz
Jeffrey Nolan
Colin Robinson, Attorney
919 N. Market St.
Box 8705
Wilmington, DE 19899

# EXHIBIT 4

EXHIBIT 

**Exhibit A**
**Commission Payments**

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|---|---|---|---|---|---|---|
| WOODBRIDGE GROUP OF COMPANIES, LLC | 13500 | 12/04/17 | 10/12/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | $ 1,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 9962 | 12/04/17 | 09/21/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 1,200.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 8819 | 12/04/17 | 08/22/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5751 | 12/04/17 | 05/31/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5018 | 12/04/17 | 05/10/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 2,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4035 | 12/04/17 | 04/05/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3806 | 12/04/17 | 04/04/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 2,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3519 | 12/04/17 | 03/22/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 7,756.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3302 | 12/04/17 | 03/16/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 38,782.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1679 | 12/04/17 | 02/08/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 750.00 |
| | | | TOTALS - 2 YEAR | | - | $ 55,989.00 |
| | | | NET DISBURSEMENTS - 2 YEAR | | | $ 55,989.00 |

DEB BRUNDAGE
PO Box 6683
Mesa, Arizona 85216
602-329-8227

Defendant Pro Se

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: | Chapter 11 |
| WOODBRIDGE GROUP OF COMPANIES, LLC, ET AL., | No. 17-12560 (BLS) |
| Remaining Debtors. | (Jointly Administered) |
| MICHAEL GOLDBERG, in his capacity as Liquidating Trustee of the WOODBRIDGE LIQUIDATION TRUST, | |
| Plaintiff, | Adversary Proceeding Case No. 19-51069 (JKS) |
| v. | |
| DEB BRUNDAGE, | |
| Defendant. | |

### DECLARATION OF DEB BRUNDAGE
### IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now defendant Deb Brundage and makes this Declaration

pursuant to 28 U.S.C. 1746, being first duly sworn, and deposes and states as

follows

1.    She is over the age of 21 and competent to testify herein

2.    At all time during the sales activity of Woodbridge, sundry personnel

at Debtor Woodbridge informed her, if the question came up, which at times it did, she was assured by Debtor Woodbridge that the investments being sold (now found by the court to be a Ponzi scheme) were legal and no license was needed to sell them, or to recommend to Woodbridge a person to purchase same.

3.      The undersigned had no knowledge of all need for licensing of the investments, and no knowledge of their illegality as sold.

4.      She in fact sold no investment products; her sole participation was upon finding a potential investor to refer that person to Debtor Woodbridge.

5.      She denies wrongdoing, or knowledge of it.

6.      There is no liability in this matter if what is alleged to be illegal is illegal and the doer, the undersigned, did not know of the illegality, and there is no affidavit showing that she did know of illegality.

7.      The sole record produced to date by Debtor/Trustee of monies paid to the undersigned is Exh. 4 to the Declaration of Trozak (attached here again as Schedule 1); it is a record that is incomprehensible; while it is said to be "Commission Payments", it also says as to the 10 payment references "DO NOT CUT CKS", suggestive, and certainly factually confusing whether the assigned check number was ever paid, and, of course it was not sent out or paid, there would be no claim for Trustee; while the record lists checks by number, the customers are not identified, and the numbered check for each seems to be held up or by the "DO NOT CUT CKS" qualification.

8.      The undersigned does not have any list of "customers", and save

2

one of the checks (the largest one, about two thirds of the overall total) to her father, which is one transaction she can recall, she cannot say for what or who the other checks were intended, or if she got them, since they are seemingly unpaid checks with the legend "DO NOT CUT CKS"; she did get paid for the transaction involving her father.

9.     As for the sample records in para. 9, Trozak Declaration, the undersigned has never heard of the customers named there and she did no business at any time with persons with those names.

10.     Material fact issues exist whether a) commissions were paid at all whether they were for the Ponzi transactions, and no some other transaction, and c) whether the undersigned knowingly or wittingly participated in the illegal scheme created by Debtor (see 3, 4, 5 above).

STATED UNDER PENALTY OF PERJURY

Dated this 2 day of December, 2024.

DEB BRUNDAGE
Defendant Pro Se

CERTIFICATE OF MAILING

Defendant certifies that she has this date mailed a copy of the foregoing to the following:

PACHULSKI, STANG, ZIEHL JONES LAW OFFICES
Jason S. Pomerantz
Jeffrey Nolan
Colin Robinson, Attorney
919 N. Market St.
Box 8705
Wilmington, DE 19899

3

DEB BRUNDAGE
PO Box 6683
Mesa, Arizona 85216
602-329-8227

Defendant Pro Se

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re: ) | Chapter 11 |
| ) | |
| WOODBRIDGE GROUP OF COMPANIES, LLC, ) | No. 17-12560 (BLS) |
| ET AL., ) | |
| ) | (Jointly Administered) |
| Remaining Debtors. ) | |
| ) | |
| MICHAEL GOLDBERG, in his capacity as ) | |
| Liquidating Trustee of the WOODBRIDGE ) | |
| LIQUIDATION TRUST, ) | |
| ) | Adversary Proceeding |
| Plaintiff, ) | Case No. 19-51069 (JKS) |
| v. ) | |
| ) | |
| DEB BRUNDAGE, ) | |
| ) | |
| Defendant. ) | |

### DECLARATION OF DEB BRUNDAGE
### IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now defendant Deb Brundage and makes this Declaration

pursuant to 28 U.S.C. 1746, being first duly sworn, and deposes and states as

follows

1.      She is over the age of 21 and competent to testify herein

2.      At all time during the sales activity of Woodbridge, sundry personnel

at Debtor Woodbridge informed her, if the question came up, which at times it did, she was assured by Debtor Woodbridge that the investments being sold (now found by the court to be a Ponzi scheme) were legal and no license was needed to sell them, or to recommend to Woodbridge a person to purchase same.

3.      The undersigned had no knowledge of all need for licensing of the investments, and no knowledge of their illegality as sold.

4.      She in fact sold no investment products; her sole participation was upon finding a potential investor to refer that person to Debtor Woodbridge.

5.      She denies wrongdoing, or knowledge of it.

6.      There is no liability in this matter if what is alleged to be illegal is illegal and the doer, the undersigned, did not know of the illegality, and there is no affidavit showing that she did know of illegality.

7.      The sole record produced to date by Debtor/Trustee of monies paid to the undersigned is Exh. 4 to the Declaration of Trozak (attached here again as Schedule 1); it is a record that is incomprehensible; while it is said to be "Commission Payments", it also says as to the 10 payment references "DO NOT CUT CKS", suggestive, and certainly factually confusing whether the assigned check number was ever paid, and, of course it was not sent out or paid, there would be no claim for Trustee; while the record lists checks by number, the customers are not identified, and the numbered check for each seems to be held up or by the "DO NOT CUT CKS" qualification.

8.      The undersigned does not have any list of "customers", and save

one of the checks (the largest one, about two thirds of the overall total) to her father, which is one transaction she can recall, she cannot say for what or who the other checks were intended, or if she got them, since they are seemingly unpaid checks with the legend "DO NOT CUT CKS"; she did get paid for the transaction involving her father.

9.      As for the sample records in para. 9, Trozak Declaration, the undersigned has never heard of the customers named there and she did no business at any time with persons with those names.

10.     Material fact issues exist whether a) commissions were paid at all whether they were for the Ponzi transactions, and no some other transaction, and c) whether the undersigned knowingly or wittingly participated in the illegal scheme created by Debtor (see 3, 4, 5 above).

STATED UNDER PENALTY OF PERJURY

Dated this  2 day of December, 2024.

DEB BRUNDAGE
Defendant Pro Se

## CERTIFICATE OF MAILING

Defendant certifies that she has this date mailed a copy of the foregoing to the following:

PACHULSKI, STANG, ZIEHL JONES LAW OFFICES
Jason S. Pomerantz
Jeffrey Nolan
Colin Robinson, Attorney
919 N. Market St.
Box 8705
Wilmington, DE 19899

3

DEB BRUNDAGE
PO Box 6683
Mesa, Arizona 85216
602-329-8227

Defendant Pro Se

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| WOODBRIDGE GROUP OF COMPANIES, LLC, | ) | No. 17-12560 (BLS) |
| ET AL., | ) | |
| | ) | (Jointly Administered) |
|      Remaining Debtors. | ) | |
| | ) | |
| | ) | |
| MICHAEL GOLDBERG, in his capacity as | ) | |
| Liquidating Trustee of the WOODBRIDGE | ) | |
| LIQUIDATION TRUST, | ) | |
| | ) | Adversary Proceeding |
|      Plaintiff, | ) | Case No. 19-51069 (JKS) |
| v. | ) | |
| | ) | |
| DEB BRUNDAGE, | ) | |
| | ) | |
|      Defendant. | ) | |

## MEMORANDUM
## IN RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT ("MSJ")

### Table of Contents

Page

Table of Contents          i

Cases and Authorities                                                                                          ii

Response to "NATURE AND STATUS OF PROCEEDING"                               1

Response ot "SUMMARY OF ARGUMENT"                                                      1

Response to "STATEMENT OF UNDISPUTED FACTS"                                    2

Defendant's Undisputed Facts                                                                       4

Response to plaintiff's ARGUMENT                                                                5

      A) Summary Judgment and Standard of Review                     5

      B) Substantive Law                                                            6

          i) No liability as Joint Intentional Tortfeasor                     6

          ii) Material Issues of Fact (Insufficient and hearsay
             Declaration)                                                               9

      C) Response to Plaintiff's Argument                                     12

          i)   First and Third Claims for Relief                              12

          Ii)   Second and Fourth Claims for Relief                    14

Conclusion                                                                                                 14

Certificate of Mailing                                                                                   15

## CASES AND AUTHORITIES

CASES

                                                                     Page

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505,
     91 L.Ed.2d 202 (1986)                                                            6

Briskman v. Del Monte Mortg. Co., 10 Ariz. App. 263, 458 P.
     2d 130 (1969)                                                                        12

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986)    6

Hay v. Duskin, 9 Ariz. App. 599, 455 P.2d 281 (1969)    12

Jabczenski v. Southern Pac. Memorial Hospitals, 119 Ariz. 15, 579 P.2d 53 (App. 1978)    12

Matshusita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)    6

Merryweather v. Nixon, 8 Tenn Rep. 186, 101 Eng. Rep. 1337 (1799)    7

Portonova v. Wilkinson, 128 Ariz. 501, 627 P.2d 232  (1981)    12

OTHERS

Ariz.  Rev.Stat. 12-2501(1)    7

Ariz.  Rev.Stat. 12–2501(F);    7

Prosser, Law of Torts, p. 247 (2nd Ed., 1955)    7

Restatement of the Law, Restitution, sec. 102 (1936)    7

Uniform Contribution Among Tortfeasors Act, 1955, sec. 1.c    7

J. P. Work, "Contribution-Wilful Tortfeasors-Common Law and Under Uniform Contribution Among Tortfeasors Act", 3 Dickinson L.R. 262 (1958)    7

## I.  RESPONSE TO "NATURE AND STATUS OF PROCEEDING"

While this defendant was a sales person for Debtor, with respect to the Debtor's Ponzi scheme, nowhere is there even alleged that defendant knew of any illegality in what she sold or of the scheme, and in fact she did not know. See defendant's Declaration, paras. 2, 3, 4.   Indeed, when the question of illegality came up, she was assured by Debtor that there was no need for any license to sell the investments and that the sales were legal.  Nowhere is that denied by the Trustee.    At best for Trustee plaintiff, there are material factual issues on these points.

## II.  RESPONSE TO "SUMMARY OF ARGUMENT"

1.  Debtor operated a Ponzi scheme, an <u>intentional</u> wrong.  While defendant denies any knowledge or complicity in the scheme, for purposes of the law applicable here and upon an <u>arguendo</u> concession on one issue of applicable law, below at VI(B)(1), p. 6, defendant agrees that she assisted in the scheme (she was a sales person).   That makes, however, both parties <u>joint intentional tortfeasors</u>.  There is <u>no</u> law supporting contribution <u>to</u> one intentional wrongdoer <u>from</u> another intentional wrongdoer.  <u>Id</u>. The Trustee's MSJ shifts the blame, as it were, to another wrongdoer.    In cannot do that on the facts here.

The complaint seeks contribution by one <u>intentional</u> tortfeasor (trustee, by reason of being the successor in interest to debtor, one of the intentional wrong-doers, and operator of the scheme) to another (defendant, Debtor's sales per-

1

son).  The Trustee admits this complicity between the two.  See para. 6, Memo.

There is no right of contribution (here, a return of commissions paid by the Ponzi

principal to his sales person) if both actors are joint wrongful tortfeasors.

      2.     There are material factual issues preventing summary

judgment.  Plaintiff has provided no sufficient affidavit of facts to carry a MSJ.

The Declara-tion (Trozak), discussed below at p. 9ff omits essential, inculpatory

facts, and it is hearsay.  The Declaration is similar to that of a debt collector–no

first hand know-ledge of anything, just a reading of accounting records long after

the inculpatory events.  There is, however here, literally only one page of record

to read, a supposed payable ledger, which on its face states that the commission

checks t sued upon heren were <u>not</u> paid.

      3.     There is no proof of damages.  At the least, there is a question

of fact as to incurrence of any damages since the one document central to the

claim by plaintiff of commissions paid (and for which this MSJ is filed), literally

denies that payment with the phrase "DO NOT CUT CKS" stated on that one

record.

   III.  RESPONSE TO "STATEMENT OF UNDISPUTED FACTS"

   For paras. 12 through 26, 28, 29, 32 through 35, this defendant has no

response.  None of these statements mention or allude to her, and she has no

knowledge of the facts alleged therein, other than to say that the facts in those paragraphs are general descriptions of the scheme and sales.  The MSJ describes a Ponzi scheme, but falls short, for MSJ purposes, of proving defendant's part in it.  There has been produced by plaintiff no record on any specific sales by defendant, or even on the one record supplied with the MSJ, that she was paid anything subject to return to the Trustee by any law sued under.

Para. 27 references her capacity or relationship with Debtor.  While the MSJ seeks recovery of commissions paid,  there is no evidence or understandable allegation as to what sales commissions were paid (see Exh 4, Trozak Decl.; re-attached here as Schedule 1), or even if any were paid at all since that one record, the only record attached to the MSJ referring to defendant, lists supposed sales, not by name, and then says "DO NOT CUT CKS" on that one record for each which seemingly says no commissions were paid.  If that is true, no damages were incurred by the Trustee here.  If nothing was paid, or if there is a question of payment or not here is a material question of fact the MSJ should be denied.

Para. 30.  Denied.   This no identification of who was sold, etc., despite discovery requests by defendant to plaintiff Trustee to identify the sales for which com-missions were to be returned.  The Trustee ignored those requests (or had

no such records, which on the discussion below as to the one record produced, seems to be the case).   While it is alleged that $55,989 in commissions was paid, that record (see Exh 4, Trozak Decl.) also says "DO NOT CUT CKS" which says no commissions were in fact paid.

IV.    DEFENDANT'S UNDISPUTED FACTS

1.    Defendant stands accused of receiving commissions from debtor on financial products illegally sold by her for Debtor, the latter operating a "Ponzi Scheme".  There is no allegation by the Trustee that this defendant did what she did knowing of any illegality.   There is, see defendant's Declaration, denial of that knowledge or intention.  Her Declaration makes it clear (and it is undenied by Trustee or anyone from Debtor) that she was assured when the issue came up that a) she needed no license to make the sales and b) the investments were legal.   See defendant's Declaration at 2, 3, 4 and 7.

3.    Merely because there was a Ponzi scheme does not prove Trustee's case against defendant.   There is no Declaration that defendant was knowingly involved.  Indeed, there is no allegation in any Declaration that she knew what she did was wrong   She in fact alleges that she was assured during her involvement that the sales needed no license and that there was nothing wrong with the product being sold when the issue came up, which was not often.

4

Trustee here (more accurately, Trustee's predecessor, Debtor, made those assurances.  See Defendant's Declaration, para. 2.   The Trustee stands in Debtor's shoes in those assurances..

4.    Taking the facts now argued by Trustee in the MSJ as true, arguendo–Debtor and defendant knowingly collaborated--Trustee and defendant, then, were undisputedly joint intentional tortfeasors and actors.   (There are no allegations of negligence in the complaint.)  The fact that the party moving for MSJ is a Trustee does not sanctify the acts for Debtor, in whose shoes he stands.  A Trustee can claim no more good faith than Debtor (which is none) in operating a Ponzi scheme.  Trustee, standing in the shoes of an intentional wrongdoer is not elevated to good faith or non-wrongdoing by reason of his office on the facts sued upon, or by the fact that bankruptcy was declared by the wrongdoing Debtor

V.   RESPONSE TO "ARGUMENT"

A.   Summary Judgment Standard

In every summary judgment motion the procedural task before the court is to determine whether there exists a "genuine issue" of fact upon which a reasonable jury or trier of fact could decide in favor of the party opposing the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); Matshusita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

There are material issues of fact here preventing the grant of the MSJ. It is the Trustee's burden to prove its case, to wit, that an illegal scheme existed (which for this MSJ, he does) and that a) defendant knew of it and, if not b) can be constructively liable (which in this MSJ, he does not do). There are material factual issues as to them so as to prevent granting the MSJ.

B)  Substantive Law

There is considerable factual dispute whether a) defendant knowingly participated in any scheme, and b) whether the Declarations of Trustee (of the Declarations filed by the Trustee, only the Declaration of Trozak mentions defendant) are sufficient to carry a MSJ.

1) With a concession arguendo that defendant was culpably involved,  both the Trustee (successor to Debtor), and defendant are joint intentional tortfeasors. There is no law supporting contribution to one intentional wrongdoer from another intentional wrongdoer. See Uniform Contribution Among Tortfeasors Act, 1955, sec. 1.c; see also that act as adopted by various states, including Ariz. Rev.Stat. 12-2501(1); 12–2501(F); Prosser, Law of Torts, p. 247

(2nd Ed., 1955); <u>Restatement of the Law</u>, Restitution, sec. 102 (1936).  Plaintiff thus has no claim here.

There was no contribution among joint tortfeasors at common law in this country.  <u>Merryweather v. Nixon</u>, 8 Tenn Rep. 186, 101 Eng. Rep. 1337 (1799), cited in J. P. Work, <u>"Contribution-Wilful Tortfeasors-Common Law and Under Uniform Contribution Among Tortfeasors Act"</u>, 3 Dickinson L.R. 262 (1958). Prosser summarized the matter as to intentional tortfeasors acting jointly

> "that the ground of the decisions would appear to be simply the fact that the parties had acted intentionally and in concert, and that the plaintiff's claim of contribution rested upon what was, in the eyes of the law entirely his own deliberate wrong.

<u>Id.</u>, p. 247 (2nd Ed. 1955).

This is carried forward in the Uniform Contribution Among Tortfeasors Act (1955) at Sec. 1.c, with particular regard to intentional wrongdoers:

> "There is no right of contribution in favor of any tortfeasor who has intentionally (wilfully or wantonly) caused or contributed to the injury .
> . . .

That statute has been adopted in sundry states including Arizona, where defend-ant lives.

With respect, the Trustee here has forgotten the posture of the parties as to each other.   <u>Arguendo,</u> their joint actions (one, the principal, and the other, the agent) were wrongful.   The court should deny the MSJ as a matter of law since

such actions, bankruptcy law or not, are wrongdoers.  The court, on the above law cannot participate in the scheme by re-distributing the ill-gotten gain between joint wrongdoers.  That is exactly what the trustee seeks here.

Side bar, it cannot be argued that the since the Trustee here is not seeking to recover commissions <u>for itself</u> but for victims of the Ponzi scheme, the rule should not apply.   The rule denying any help to a wrongdoer from another wrongdoer is not built on who will profit, but rather on the "guilt" and inculpability of the joint action.

Whether a Ponzi scheme or statutory fraud occurred here is irrelevant.  It is only relevant that what the parties did was an <u>intentional</u> wrong, and that defendant engaged knowingly in it (again, for this motion defendant concedes she did so <u>arguendo</u>).  Trustee stands in the shoes of the other wrongdoer, the Debtor.  If Debtor engaged in a Ponzi scheme, which it did, so too must the Trustee be taken to have been in one as well.

2) There are <u>factual issues</u> that oblige the MSJ to be denied.

The MSJ is supported by a Declaration of one Nicholas Trozak.   Trozak's Declaration does not prove Trustee's case.

A.    Trozak claims "personal knowledge" of  what is in his Declaration (para. 1).   He  works for the forensic account hired by the Trustee to help in his

8

marshaling of assets (para. 2); his "personal knowledge" then, is what records he has read, not of Debtor's business per se.

B.    By his own definition, then, he claims no "personal knowledge" of defendant's involvement unless something inculpatory shows up in the records he has read.   Nothing has save one piece of paper, his Exh. 4.

C.    While he says he has knowledge of the "day-to-day" transactions of Debtor, he does not say how he can do that since he was not hired until several years after the events involving defendant here (para. 3); he then goes on to say what he knows is merely from having "access to and reviewed the business records of Debtors" (id.); he does not say what records, and he does not attach any record, save one (his Exh. 4; see his para. 8; Schedule 1 to Defendant's Declaration) (id.)    See F below.

D.    That he has only the one page, Exh. 4, of records relative to defendant, is demonstrated by the fact that the sample substantive Ponzi records refer-enced in para.  9 of his Declaration, are not transactions involving Defendant (para. 9 in her Declaration).  He does not connect them in any way with Defendant.   He thus does no know of any of defendant's customer or he would have attached those records, and not a sample.

9

E.     The only time Defendant is even named in Trozak's Declaration is para. 12, referencing Exh. 4, where he states that the exhibit demonstrates commissions paid to Defendant.  It does not do that.  That commis-sions were paid generally does not make the MSJ here since there are only specific commissions sought by Trustee (see Sched. 1, Exh. 4, Trozak Decl.)  Since defendant denies knowledge and intent, there is a material factual issue raised in the MSJ, whether the commissions accrued by knowledgeable wrongful act.

F.     More importantly, Trozak does not comment on the meaning of the phrase  "DO NOT CUT CKS" on that one page for each commission, which seemingly says no commissions were paid.  If that is true, no damages were incurred here since nothing was paid to defendant.  Only the Exh. 4 transactions sued upon here, not some other relationship to "transfers" as argued under the bankruptcy statutes.   Defendant, to make this argument, does not have to prove she did not get; rather, the Trustee has to prove that she did.

G.   Exh. 4 to the Declaration is a list of alleged Ponzi sales made or referred by defendant.  It is unclear who or what they are.  In discovery, request was made for more information.  None was provided by the Trustee.   There is nothing in the exhibit that bespeaks of fraud and the deals, or customers, are not identified other than to indicate that some financial record says that defendant

was paid (or not paid, "DO NOT CUT CKS").   While para. 12 of the Declaration

says that defendant was paid $55, 989 "out of the Debtors' main operating

account" as "commissions".   To reach that conclusion, Trozak takes a speculative

leap by saying that these payments were "with respect to the sale of FPMC[,]

specifically Notes," but he attaches no such records to show that.   He reaches

this conclusion from looking at one page of records.   He would admit that he has

no other first hand (read, admissible) knowledge.   Trozak claims no first hand

knowledge.   He would admit that.   He "reviewed business records" one ledger

page only.   He does not say what records he reviewed other than Exh. 4.   And

that record says no payment made, i.e.,  "DO NOT CUT CKS",

     H. Trozak's Declaration, as to Exh. 4, is inadmissible hearsay.  If it is

intended to qualify as a "business record" [FRE 803(6)] it utterly fails since it does

state that Exh. 4 was prepared at or near the time of occurrence, who prepared it,

whether the records reflect regularly conducted business activity,

contemporaneously prepared as the referenced acts occurred, and whether such

a record was a normally prepared record in Debtor's business.  Id.

     Only matters which would be admissible in evidence may be properly

considered in MSJ proceedings; affidavits which are not admissible as evidence

should not be considered.  Briskman v. Del Monte Mortg. Co., 10 Ariz. App. 263,

458 P.2d 130 (1969).  General conclusions are not admissible and, when

included in an affidavit in summary judgment, are not to be considered.  Hay v.

Duskin, 9 Ariz. App. 599, 455 P.2d 281 (1969).  Hearsay affidavits are to be

disregarded in summary judgment proceedings.  Portonova v. Wilkinson, 128

Ariz. 501, 627 P.2d 232  (1981); Jabczenski v. Southern Pac. Memorial Hospitals,

119 Ariz. 15, 579 P.2d 53 (App. 1978).

The Trustee's MSJ stands before the court, then, with a Declaration that

that does not connect the scheme to defendant or the money sought.   At the

least, the court should deny the MSJ for want of a sufficient Declaration.  There

exist material issues to prevent granting the MSJ.

### C.  Response to plaintiff's ARGUMENT

### i).  First and Third Claims for Relief–intentional fraud

The trustee first argues (p. 13ff, memo, paras. 40-51), first and third claims

for relief, that a) a scheme existed, and b) it was done intentionally.  All that may

be true but nowhere does anyone allege that defendant knew it, or participated

knowingly in it.  She in fact denies knowledge (see defendant's Decl. at 2, 3, 4).

At 42 it is argued that defendant received "transfers".  Again she did not know

they were ill-gotten gain.   Importantly, the Trustee cannot even say what

investors were involved (see Exh. 4, Torzak; Sched. 1), and even that one record

suggests that <u>no</u> transfers were made at all.   (Defendant is sued here only for certain alleged transfers; Exh. 4, not generally for an undetermined amount.) While a transfer in furtherance of a Ponzi scheme can be presumed illegal (see 46, Memo, top of page 16, and citing case), in this case the only record setting forth any transfer says -"DO NOT CUT CKS"'-which could only reasonably mean no check sent or funds transfers.

At the least, a factual issue exists on what the record says.   The Trustee just has no record here that the court may say as a matter of law in MSJ that defendant received illegal "transfers" since a) Exh. 4 indicates no payment was made on the ten listed proposed commissions, and hence, no transfer, and b) it cannot identify by name who these investors are or what "transfers" were involved.

The same is true as to the "badges of fraud", "concealment of assets", and state law violations  arguments, p. 18ff, Memo, 52- 65.   There is no receipt proved, no transaction identified.

Defendant understands that she must prove her defense to any MSJ. That duty arises only if a case is put forth.  She cannot respond intelligently to what is said on Exh. 4.    And that is the entire case here.  Here the best that can be said for the Trustee is that a scheme existed, and that defendant was a sales

person.    He fails, however, to show what commissions were paid, or for what transactions.   The duty to carry one's defense does not arise until a case is first shown, in this MSJ setting, to exist to the point of no factual dispute.  That is not the case here.

### ii)   Second and Fourth Claims (Constructive Fraud)

The trustee argues (p. 24ff, memo, paras. 66-68), second and fourth claims for relief the same thing, essentially as it does for the first and third claims. Before relief can be granted for a constructive fraud, there must not only be shown that need for one exists here (done by showing the scheme), and that this defendant did it, or participated in it to the extent of the 10 transactions alleged here on Exh. 4.   That has not been done beyond factual dispute.

## V.    CONCLUSION

The motion must be denied on the law (joint intentional tortfeasor seeking relief) and because material factual issues exist including no sufficiently support-ive Declaration..

Dated this _2_ day of December, 2024.

DEB BRUNDAGE
Defendant Pro Se

## CERTIFICATE OF MAILING

Defendant certifies that she has this date mailed a copy of the foregoing to the following:

PACHULSKI, STANG, ZIEHL JONES LAW OFFICES
Jason S. Pomerantz
Jeffrey Nolan
Colin Robinson, Attorney
919 N. Market St.
Box 8705
Wilmington, DE 19899

# EXHIBIT 4

EXHIBIT 

**Exhibit A**
**Commission Payments**

| Debtor | Ck. No. | Petition Date | Clear Date | Name | Receipts | Disbursements |
|---|---|---|---|---|---|---|
| WOODBRIDGE GROUP OF COMPANIES, LLC | 13500 | 12/04/17 | 10/12/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | $ 1,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 9962 | 12/04/17 | 09/21/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 1,200.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 8819 | 12/04/17 | 08/22/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5751 | 12/04/17 | 05/31/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 5018 | 12/04/17 | 05/10/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 2,500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 4035 | 12/04/17 | 04/05/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 500.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3806 | 12/04/17 | 04/04/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 2,000.00 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3519 | 12/04/17 | 03/22/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 7,756.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 3302 | 12/04/17 | 03/16/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 38,782.50 |
| WOODBRIDGE GROUP OF COMPANIES, LLC | 1679 | 12/04/17 | 02/08/16 | DEB BRUNDAGE(DO NOT CUT CKS) | | 750.00 |
| | | | **TOTALS - 2 YEAR** | | - $ | 55,989.00 |
| | | | **NET DISBURSEMENTS - 2 YEAR** | | $ | 55,989.00 |